# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ILSY MARILYN BU, | ) | |
| 3516 Commodore Joshua Barney Dr. NE | ) | |
| Apt. 401, Washington, DC 20018, | ) | Case No.: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERBER PRODUCTS COMPANY, | ) | |
| 1812 North Moore Street, | ) | |
| Arlington, VA 22209 | ) | |
| | ) | |
| Defendant. | ) | |

## GERBER PRODUCT COMPANY'S NOTICE OF REMOVAL

Defendant Gerber Products Company ("Gerber") hereby removes this action, Civil Action No. 2021 CA 004804 B in the District of Columbia Superior Court, to this Court under 28 U.S.C. § 1441(a) (removal of civil actions). Removal is proper based on the original subject-matter jurisdiction of this Court under 28 U.S.C. § 1332(a) (diversity of citizenship) and under 28 U.S.C. § 1331 (federal question). Venue is proper under 28 U.S.C. § 1441(a) because the case was filed in the Superior Court of the District of Columbia, which is coextensive with this District. This Notice of Removal comports with 28 U.S.C. § 1446 (procedure for removal of civil actions).

## PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1.      On December 21, 2021, plaintiff Ilsy Marilyn Bu ("Plaintiff") filed this action individually and on behalf of the general public of the District of Columbia (the "General Public") in the District of Columbia Superior Court as Civil Action No. 2021 CA 004804 B. *See* Ex. A ("Compl.").

2.      Plaintiff sent a summons and a copy of the Complaint by certified mail to Gerber's registered agent for service of process on December 27, 2021.  The agent received that summons and Complaint on December 30, 2021.  *See* Ex. B.

3.      This Notice of Removal is therefore timely because it is filed within 30 days of service.  *See* 28 U.S.C. § 1446(b).  In accordance with 28 U.S.C. § 1446(d), Gerber will file a copy of this Notice of Removal with the Clerk of the District of Columbia Superior Court and provide written notice to Plaintiff.

4.      On January 24, 2022, Judge Hiram Puig-Lugo ordered a stay of this action under D.C. Code § 28-3905(k)(7)(A) pending resolution of a related action filed by the District of Columbia Attorney General, *D.C. v. Beech-Nut Nutrition Co.*, No. 2021 CA 001292 B (D.C. Super.) ("DC AG Lawsuit").  *See* Ex. C (including all orders and other papers filed in the District of Columbia Superior Court pursuant to 28 U.S.C. § 1446(a)); D.C. Code §  28-3905(k)(7)(A) ("Commencement of an action by the Attorney General under § 28-3909 . . . shall serve to stay until the resolution of the Attorney General's action any civil action that includes any claim that is: (i) Made pursuant to this subsection by a public interest organization or on behalf of the general public; and (ii) Based in whole or in part on any matter complained of in the action commenced by the Attorney General.").  Once the DC AG Lawsuit is resolved with finality, the parties will meet and confer and submit a proposed schedule to the Court to resume litigation of this action.

5.      Upon lifting of the stay, Plaintiff intends to file a motion to remand this action to the District of Columbia Superior Court and Gerber intends to file a motion to transfer venue of this action to the United States District Court for the Eastern District of Virginia, where dozens of substantially similar, earlier-filed putative false advertising class actions are pending and have

been consolidated, including multiple actions alleging—like Plaintiff here—violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq*. ("CPPA").

## NATURE OF THE ACTION

6.    This action is essentially duplicative of several putative class actions filed against Gerber following the release of a highly contested report by a subcommittee of the U.S. House of Representatives on February 4, 2021, purporting to find high levels of certain naturally occurring heavy metals in various manufacturers' baby food products.  On June 7, 2021, the Judicial Panel on Multidistrict Litigation ("JPML") directed Gerber and other baby food manufactures to "self-organize" and to transfer and consolidate these substantially similar actions to a single federal district, if possible.  *See In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*, MDL No. 2997, 2021 WL 2369296, at *3 (JPML June 7, 2021).  In accordance with that instruction, Gerber has successfully moved to transfer actions such as this one to the Eastern District of Virginia, the District in which Gerber is headquartered.

7.    Currently, 28 substantially similar actions are pending against Gerber before Judge Liam O'Grady in the Eastern District of Virginia, including cases alleging violations of the CPPA.  *See Abbott et al. v. Gerber Products Co.*, No. 1:21-cv-00789 (E.D. Va.), ECF No. 1 ¶¶ 378-96; *Garces et al. v. Gerber Products Co.*, No. 1:21-cv-00902 (E.D. Va.), ECF No. 1 ¶¶ 624-39.  All of these actions have been or will likely be consolidated into *In re Gerber Products Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-0269 (E.D. Va.).

8.    In this action, Plaintiff similarly alleges that Gerber "misrepresented the true nature of the ingredients in its baby food when it failed to disclose the presence or risk of dangerous levels of heavy metals" in breach of express and implied warranties and in violation

3

of the CPPA.  *See* Compl. ¶¶ 1-3, 15.  According to the Complaint, "Gerber manufactures one of the most recognizable brands of baby food products" and "has cultivated an image with the public of producing high quality, nutritious, and safe products" even though such products "may contain heavy metals" (arsenic, lead, mercury, and/or cadmium), which Plaintiff alleges is reinforced by false or misleading statements and omissions in Gerber's marketing and advertising.  *See* Compl. ¶¶ 37-41.  Specifically, Plaintiff points to § 28-3904 (a), (b), (d), (e), (f), (f-1), (h), and (x) of the CPPA as the subsections "relevant" to these alleged violations.  *Id.* ¶ 11.

9.     The Complaint alleges there is "no known safe level" of heavy metals in baby food products—a position purportedly adopted by federal regulatory agencies such as the Food and Drug Administration ("FDA") and the Environmental Protection Agency ("EPA"). Accordingly, Plaintiff alleges the General Public "consider[s] the mere presence of [arsenic, lead, mercury, and/or cadmium] as a material fact in considering what baby food products to purchase."  Compl. ¶ 108.  She claims Gerber's alleged failure to test both ingredients and finished products for those heavy metals and disclose their presence on product packaging—or to warn against repeated exposure due to feeding baby foods multiple times a day—has allowed Gerber to "generate[] substantial sales" at the expense of the General Public.  *See id.* ¶¶ 109-12.

10.     Based on these allegations, Plaintiff purports to bring this action "in order to cause the disclosure of the presence or risk of heavy metals that pose a known risk to infants in the Baby Foods, to correct the false and misleading perception [Gerber] has created in the minds of consumers that the Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Baby Foods."  Compl. ¶ 113.  The Complaint seeks damages for Plaintiff, and an injunction "against [Gerber's] violations of the CPPA" on behalf of the General

4

Public, attorney's fees, and "any other relief this court deems just and proper."  Compl. at 34 (Prayer for Relief).

## THIS COURT HAS DIVERSITY JURISDICTION

11.     28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."  Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over "all civil actions" where (1) there is complete diversity of citizenship between the parties and (2) the amount in controversy "exceeds the sum or value of $75,000."  *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).  Both criteria are satisfied here.

### The Parties Are Completely Diverse

12.     Plaintiff is a resident of the District of Columbia. Compl. ¶ 9. Gerber is incorporated in Michigan and maintains its principal place of business at 1812 North Moore Street, Arlington, VA 22209.  *Id.* ¶ 10.

13.     Accordingly, this action satisfies the diversity of citizenship requirement because Plaintiff is a citizen of the District of Columbia, while Gerber is a citizen of Michigan and Virginia.  28 U.S.C. § 1332(c)(1) (providing a corporation is a "citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business").

### The Amount in Controversy Exceeds $75,000

14.     In calculating the amount in controversy, the Court must accept the allegations in the Complaint as true and assume a jury will return a verdict for Plaintiff on all claims.  *See, e.g.*, *LaVelle v. State Farm Mut. Auto Ins. Co.*, 235 F. Supp. 3d 217, 223-24 (D.D.C. 2017).  For the purpose of removal, Gerber must make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and "[e]vidence establishing the amount [in controversy] is

AMERICAS 111829013

required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, [Gerber's] allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Sloan v. Soul Circus, Inc.*, No. 15-cv-01389 (RC), 2015 WL 9272838, at *5 (D.D.C. Dec. 18, 2015) (describing the "two-part framework" articulated in *Dart*).

15.     Here, Plaintiff seeks "statutory or actual damages, trebled" on her own behalf, attorney's fees, injunctive relief "against [Gerber's] violations of the CPPA" on behalf of the General Public, and "any other relief this court deems just and proper."  Compl. at 34 (Prayer for Relief).  The Complaint disclaims individual damages for Plaintiff over $74,000, but does not so limit the request for attorney's fees, cost of an injunction, or other relief.

16.     Together, the amount in controversy significantly exceeds $75,000.  *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297 (D.D.C. 2013) (considering the combined monetary value of each category of relief sought under the CPPA to determine the total amount in controversy); *see also, e.g.*, *Parker-Williams v. Charles Tini & Assoc., Inc.*, 53 F. Supp. 3d 149, 152-53 (D.D.C. 2014); *Bradford v. George Wash. Univ.*, 249 F. Supp. 3d 325, 334 (D.D.C. 2017); *M3 USA Corp. v. Haunert*, No. 20-cv-3784 (DLF), 2021 WL 1894847, at *2-3 (D.D.C. May 11, 2021).

### 1.  Statutory Damages

17.     Under the CPPA, Plaintiff may be awarded the greater of (a) statutory damages of $1,500 per "violation" or (b) actual damages, trebled.  *See* D.C. Code 28-3905(k)(2)(A).

18.     As Plaintiff alleges she purchased Gerber Beef and Gravy on only one occasion on May 29, 2021, the greater sum is likely statutory damages in the amount of $1,500.  *See* Compl.  ¶ 17  &  Fig. 1 (receipt showing a total purchase price of $11.93).  Therefore, the

additional categories of relief need only exceed $73,500 to satisfy the amount in controversy. *See, e.g.*, *Zuckman*, 958 F. Supp. 2d at 300-01.

*2. Injunctive Relief*

19.     In this Circuit, "the test for determining the amount in controversy is the pecuniary result to *either party* which the judgment would directly produce." *Tatum v. Laird*, 444 F.2d 947, 951 n.6 (D.C. Cir. 1971) (emphasis added), *rev'd on other grounds*, 408 U.S. 1 (1972); *see also Bronner v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020) (the value of equitable relief may be determined either by "the value of the right that [the] plaintiff seeks to enforce . . . or [by] the cost to the defendants to remedy the alleged [defect]" (quoting *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978))).  Accordingly, in an action seeking injunctive relief such as this one, the amount in controversy is satisfied "with respect to *all of the plaintiffs*" when the "costs that the [defendant] would incur if the plaintiffs prevailed" exceeds the jurisdictional threshold.  *Committee for GI Rights v. Callaway*, 518 F.2d 466, 473 (D.C. Cir. 1975) (emphasis added).

20.     Here, the cost of Plaintiffs' requested relief to Gerber easily exceeds $73,500 (the remaining jurisdictional amount).  Specifically, an order enjoining Gerber from the challenged trade practices—which Plaintiff alleges include violations of no less than eight subsections of the CPPA as well as other common law obligations, *see, e.g.*, Compl. ¶¶ 11-12—would cost Gerber significantly in excess of $75,000.

21.     At a minimum, compliance with such an injunction would require Gerber to (a) "recall" and destroy all unsold product inventory alleged to contain "harmful levels of heavy metals" from circulation within the District of Columbia, including the 32 Gerber products specifically identified in footnote 1 of the Complaint (the "Baby Foods"), *see, e.g.*, Compl. ¶¶ 2-

7

5, 42-43, 48, 104; (b) redesign Gerber's product packaging, website, and other marketing and advertising materials to remove or replace all allegedly false or misleading content, *see id.* ¶¶ 38, 40-41, 97, 107; (b) develop and implement new, comprehensive testing policies and procedures to regularly test all ingredients and finished products for heavy metals, including arsenic, lead, mercury, and cadmium, *see id.* ¶¶ 51, 108-09; and (c) provide both general and specific disclosures regarding the presence or risk of any such heavy metals in the Baby Foods on Gerber's product packaging, website, and other marketing and advertising materials, *see, e.g.*, *id.* ¶¶ 3, 39, 70, 110-113.

22.     To the extent Plaintiff also seeks an order enjoining Gerber from selling any finished products which testing reveals to contain arsenic, lead, mercury, and/or cadmium in any amount exceeding the threshold levels alleged in the Complaint—*see, e.g.*, Compl. ¶ 58 (alleging, while "no known safe level has been identified," mercury in baby food should not exceed 1 ppb)—Gerber's anticipated cost of compliance with an injunction will increase and will necessarily include lost profits resulting from its inability to sell any such inventory.

23.     Separate and apart from an injunction against continued "violations of the CPPA," Plaintiff's requested injunctive relief would also require Gerber to implement a corrective marketing campaign in order "to correct the false and misleading perception [Gerber] has created in the minds of consumers that the Baby Foods are high quality, safe, and healthy." Compl. ¶ 113.  According to the Complaint, Gerber, as "one of the most recognizable brands of baby food products in the United States," has cultivated the false perception that the Baby Foods are "high quality, nutritious, and safe products" even though they "may contain heavy metals," *see, e.g.*, *id.* ¶¶ 37-41, and that heavy metals are naturally occurring in such products when Plaintiff alleges they "may be more common in baby foods because of the vitamins and minerals added to

those foods during processing," *id.* ¶ 97.  Therefore, to comply fully with Plaintiff's requested injunctive relief and implement such a broadly-defined corrective marketing campaign in the District of Columbia alone, Gerber would likely need to expend an additional amount significantly in excess of $75,000.

24.     The cost of Gerber's compliance with an injunction is sufficient to meet the remaining $73,500 amount in controversy *even if* this Court applies the non-aggregation principle to require that "the total cost of compliance must be divided by the number of the injunction's beneficiaries," *see Beyond Pesticides v. Exxon Mobil Corp.*, No. 20-cv-01815-TJK, 2021 WL 1092167, at *2 (D.D.C. Mar. 22, 2021)—*i.e.*, members of the General Public who purchased the Baby Foods during the relevant time period, including Plaintiff.  Indeed, when added to Plaintiff's other relief—including statutory damages and attorney's fees—the costs of compliance will far exceed the $75,000 threshold.

### 3.  Attorney's Fees

25.     In addition to the relief outlined above, attorney's fees "may be counted towards establishing a jurisdictional amount when they are provided for by . . . statute," *Parker-Williams*, 53 F. Supp. 3d at 153 (D.D.C. 2014) (internal quotation marks omitted), as they are under the CPPA, *see* D.C. Code § 28-3905(k)(2)(B).

26.     As Plaintiff seeks attorney's fees in her individual capacity, rather than on behalf of the General Public, any potential award of attorney's fees should be allocated to Plaintiff only.  *Cf. Breakman v. AOL LLC*, 545 F. Supp. 96, 101, 107 (D.D.C. 2008) (holding attorney's fees must be apportioned to all D.C. consumers where the representative plaintiff "is not bringing this [CPPA] action 'in his individual capacity'"); *see also Zuckman*, 958 F. Supp. 2d at 301-02 (rejecting pro rata apportionment because it "underestimate[s]  the portion of fees

AMERICAS 111829013

properly attributed to [the named plaintiff]" who "likely would have still chosen to bring this suit even if he could assert only individual claims").

27.     The amount of attorney's fees in this action are likely to independently satisfy the amount in controversy requirement, considering attorney fee awards in CPPA actions regularly exceed $75,000.  *See, e.g.*, *Williams v. First Gov't Mortg. & Inv'rs. Corp.*, 225 F.3d 738, 745-47 (D.C. Cir. 2000) ($199,340); *Beck v. Test Masters Edu. Servs., Inc.*, 73 F. Supp. 3d 12, 20 (D.D.C. 2014) ($854,623.90); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009) ($453,885.31).

## THIS COURT HAS FEDERAL-QUESTION JURISDICTION

28.     Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Where, as here, a plaintiff asserts only state-law causes of action, the "case 'arises under' federal law if a 'well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *D.C. v. Grp. Hospitalization & Med. Servs., Inc.*, 576 F. Supp. 2d 51, 53 (D.D.C. 2008) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)).

29.     Federal-question jurisdiction is proper here, as Plaintiff's state-law claims under the CPPA implicate federal issues that are (1) "necessarily raised," (2) "actually disputed," (3) "substantial," and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

30.     Plaintiff's claims turn on federal law because they are predicated on the assertion that any amount of arsenic, lead, mercury, and/or cadmium in the Baby Foods contravenes

federal standards recognizing "safe" or "allowable" levels of such heavy metals.  The crux of the Complaint is that, by making "assurances that the Baby Food is natural and safe for infant consumption, [Gerber] warrants, promises, represents, misleads, labels, and advertises that the Baby Foods are free of any heavy metals"—which Plaintiff alleges are universally known to be harmful to babies in *any* amount.  *See, e.g.*, Compl. ¶¶ 40, 70, 107.  Indeed, the Complaint is replete with allegations that "there is no known safe level of exposure" to heavy metals in baby food products.  *Id.* ¶ 95; *see also id.* ¶ 56 ("Because lead can accumulate in the body, . . . no safe level of exposure has been identified."); *id.* ¶ 85 (alleging the Baby Food Council "acknowledge[d] no safe level in the food supply").  Plaintiff claims the "mere presence" of heavy metals is "know to pose health risks to humans and particularly infants," *id.* ¶ 42; *see also, e.g.*, *id.* ¶¶ 48-49 (alleging "arsenic, lead, mercury, and cadmium . . . are neurotoxins," "exposure [to which] . . . 'can harm a baby's developing brain and nervous system' and cause negative impacts . . . [e]ven [in] trace amounts"); *id.* ¶ 57 (alleging "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead").

31.     According to the Complaint, federal regulatory bodies, including FDA and EPA, endorse this "no known safe level" standard for heavy metals in baby food products.  For example, Plaintiff alleges FDA has "declared arsenic, lead, cadmium, and mercury 'dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects,'" Compl. ¶ 52, and, while FDA and EPA have set an "allowable limit" of those heavy metals in products such as bottled water, there is no "allowable limit" for baby foods.  *See id.* ¶ 53 (FDA and EPA "documented the risks associated with exposure to arsenic" and set an "allowable limit" only for water and juice, and an "action level" for infant rice cereal); *id.* ¶ 58 ("[a]lthough there is no federal standard for lead in baby food . . . FDA has set the maximum

11

lead level in bottled water"); *id.* ¶ 61 ("[r]ecognizing the harm caused by ingestion of mercury, EPA has set the maximum mercury level in drinking water"); *id.* ¶ 66 ("EPA and FDA have set the standards for the allowable limit of cadmium in drinking water and bottled water"). The Complaint alleges the Baby Foods contain levels of heavy metals "surpassing any existing regulatory standard." *Id.* ¶ 37.

32.     This alleged "no known safe level" standard is an essential element of Plaintiff's claim that the "mere presence" of heavy metals in the Baby Foods makes Gerber's representations about the health and safety of those products false or misleading in violation of the CPPA. Whether any amount of heavy metals in the Baby Foods renders them unsafe under federal law—and, if not, whether FDA and EPA's "allowable limit" for other products is the bar by which the Baby Foods are to be measured and determined safe—are substantial, disputed questions of federal law necessary to the resolution of this action.

33.     Further, considering dozens of substantially similar actions against Gerber and other baby food manufacturers are pending across the country, Plaintiff's strategy to evade federal court invites state courts to impose a patchwork of standards contrary to FDA's exclusive authority to do so. *See Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, No. GLR-12-2718, 2013 WL 4501308, at *5 (D. Md. Aug. 21, 2013) ("Infant formula and baby food marketed in the United States are [] subject to FDA regulations."), *aff'd sub nom. Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616 (4th Cir. 2015). Federal issues are therefore necessarily and substantially implicated by Plaintiff's claims that encroach on these FDA regulatory powers, justifying "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

AMERICAS 111829013

34.     Consistent with *Grable*, this Court has jurisdiction to hear state-law claims which turn on the construction and interpretation of federal standards; indeed, resolution of these issues in a federal forum is not only of "substantial" importance in this action, but is also essential to ensure uniform safety and regulatory standards are applied to baby food products across "the federal system as a whole." *See Gunn*, 568 U.S. at 260.

Dated:  January 26, 2022                    WHITE & CASE LLP


                                            /s/ *J. Frank Hogue*
                                            J. Frank Hogue (D.C. Bar No. 991492)
                                            White & Case LLP
                                            701 Thirteenth Street, NW
                                            Washington, DC  20005-3807
                                            Tel: (202) 626-3600
                                            Fax: (202) 639-9355
                                            fhogue@whitecase.com

                                            *Counsel for Defendant*
                                            *Gerber Products Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing Notice of Removal was

forwarded this 26th day of January 2022 by first class U.S. Mail, postage prepaid to:

Thomas C. Willcox (D.C. Bar No. 44135)
1701 16th Street NW, Suite 211
Washington, DC 20009
Tel: (202) 338-0818

*Attorney for Plaintiff*

/s/ *J. Frank Hogue*
J. Frank Hogue